IN THE STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
IN THE CHARLESTON DIVISION

| | |
|---|---|
| Shevon Scott<br><br>                Plaintiff<br><br>v.<br><br>County of Charleston<br><br>                Defendant | **COMPLAINT**<br>**Americans with Disabilities Act Retaliation**<br><br>Case No. 2:23-cv-155-BHH-MHC<br><br>**Jury Trial Demanded** |

### **COMPLAINT FOR DAMAGES**

**COMES NOW,** Plaintiff Shevon Scott (hereinafter "Plaintiff" or "Scott"), by and through her undersigned counsel, and files this Complaint for Damages against Defendant Charleston County, South Carolina (hereinafter "Defendant" or "the County") and respectfully shows this Court as follows:

### **PARTIES**

1) Plaintiff is a resident of Charleston County, South Carolina, within the district and division of this court.

2) Defendant Charleston County is government body, established and operating under the laws of the State of South Carolina, and is located within the district and division

of this Court.

## JURISDICTION

3) Plaintiff invokes the jurisdiction of this Court over a federal question pursuant to the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12111 to 12117, and a claim of Retaliation for protected activity under Equal Employment Opportunity law.

## VENUE

4) Venue is proper in that Plaintiff resides within the district and division of this Court, and the unlawful employment practices complained of herein occurred within the district and division of this Court. The government of Charleston County is located within the district and division of this Court.

## EXHAUSTION OF ADMINISTRATIVE APPEALS

5) Plaintiff timely filed a charge of discrimination against Defendant with the United States Equal Employment Opportunity Commission (hereinafter "the EEOC"). The EEOC issued a Right to Sue on October 17, 2022. Notice of Right to Sue is attached as Exhibit A.

6) This action has been commenced within 90 days of Plaintiff's receipt of the EEOC notification of a right to sue.

## FACTUAL ALLEGATIONS

7) During the period of time relevant to this lawsuit, Plaintiff was employed as a Public Safety Telecommunicator II in the Charleston Consolidated 9-1-1 Center. She was first hired by the County on April 1, 2013.

8) On November 8, 2019, Plaintiff filed with the EEOC a complaint against Defendant. The Complant was referred to the South Carolina Human Affairs Commission (hereinafter "SCHAC"), and designated Complaint No. 1-20-231D, R, RET.

9) Defendant's office of Human Resources was in possession of letters certifying her need for accommodations for her recognized disabilities, and was provided with periodic updated letters of certification.

10) Consistent with the accommodations requested in the letters of certification, Plaintiff was permitted to arrive at work after her scheduled time.

11) Plaintiff had never been counseled or disciplined on the basis of these late arrivals.

12) Plaintiff was consistently asked to fill in when co-workers were absent, and was regularly asked to work overtime hours.

13) On September 16, 2020, SCHAC issued a Dismissal and Right to Sue letter associated with the complaint she had previously filed, Complaint No. 1-20-231D, R, RET.

14) On September 20 Defendant was unable arrive to work at her scheduled time.

15) On September 21, Defendant called a meeting with Plaintiff to discipline her for her late arrival on September 20. This was the first time Plaintiff had been counseled or warned regarding her late arrivals. At that time Defendant claimed that Plaintiff had been orally counseled for a late arrival on August 22, which was not true.

16) At the same September 21 meeting, Plaintiff was also presented, for the first time, a written warning for a late arrival on September 7. Defendant asserted that the written warning was not delivered before September 21 because her supervisor had not had time to deliver it.

17) On September 30, 2020, two weeks after SCHAC issued to its Right to Sue, Plaintiff was placed on administrative leave with pay and told that she could not return to work until she could provide a psychological fitness to return to duty. She had never before been asked to provide such a document, and had consistently provided medical certifications of her ability to execute the essential duties of her job.

18) The County insisted that she obtain a certificate of fitness to return to duty from the health provider of their choosing.

19) The County scheduled, canceled, postponed and rescheduled, for Plaintiff, medical appointments with the providers of their choosing in October, November and December.

20) By letter dated Friday January 22, 2021, Defendant informed Plaintiff, for the first time, that she was entitled to obtain a second opinion if she could do so by January 27. The letter was sent by first class mail. Plaintiff received the letter on January 25. By that time, Plaintiff had 48 hours to get an appointment, an evaluation and a letter of opinion from a physician.

21) To her credit, Plaintiff was able to get a letter from her psychiatrist, but he sent the letter to her work email, from which she had already been locked out.

22) Because she did not make the deadline of January 27, on January 28, Ms. Scott's status was switched from paid administrative leave to unpaid FMLA leave. She was never permitted to return to work. When she exhausted her FMLA leave on March 29, 2021, she was fired.

## FIRST CLAIM FOR RELIEF
## Violations of the Americans with Disabilities Act, as amended,

23) Paragraphs 1-20 are incorporated here by reference.

24) Plaintiff was hired by Defendant on April 1, 2013 to perform a job for which she was qualified. That has never been in dispute.

25) Plaintiff suffered from one or more recognized health conditions that constitute disabilities under the Americans with Disabilities Act, as amended. These health conditions were known to her employer.

26) Plaintiff was able to perform all functions of her job with or without reasonable accommodations, and her requested accommodations were honored until SCHAC issued its Right to Sue.

27) On September 16, 2020, SCHAC issued a Right to Sue.

28) On September 30, 2020, Defendant retaliated against Plaintiff by forcing her to go out on administrative leave that she did not request, to obtain a certificate of fitness to return to duty.

29) Plaintiff's fitness, with reasonable accommodations, had been established by her physician.

30) While forcing Plaintiff to remain on involuntary leave, in an effort to harass her, and to induce her to resign, Defendant required Plaintiff to obtain the certificate of fitness to return to duty from the physician of Defendant's choosing.

31) In its continuing retaliation against Plaintiff, Defendant intentionally delayed and sabotaged Plaintiff's ability to obtain the unnecessary certification they required.

32) When Plaintiff was finally permitted to provide certification from the physician of her choosing, she was given two days to do so.

33) Defendant violated the Americans with Disabilities Act by refusing to allow her to work, based on the false assertion that she was unable to perform the essential duties of her job with or without reasonable accommodations, and by requiring her to obtain a certification of fitness for duty from the healthcare provider of Defendant's choosing.

## FOR A SECOND CAUSE OF ACTION
## Retaliation

34) Paragraphs 1-30 are incorporated herein by reference.

35) On November 8, 2019, Plaintiff engaged in protected activity in filing against Defendant a complaint with the Equal Employment Opportunity Commission, asserting disability and race discrimination.  That complaint was referred to the South Carolina Human Affairs Commission.

36) Defendant sought to retaliate against Plaintiff but waited until the investigation was complete, and a Right to Sue was issued to do so, to avoid drawing the attention of SCHAC.

37) On September 16, 2020, SCHAC issued a Right to Sue.

38)     On September 30, just 14 days later, Defendant retaliated against Plaintiff by placing her on involunatary paid leave, and demanding that she obtain a certification of fitness for duty from the physician of Defendant's choosing.

39) Although she was drawing her regular pay during that time, she was being denied the opportunity to earn overtime pay, which she had regularly earned, and which was a substantial portion of her income.

40)     While Plaintiff made every effort, through the following months, to make those doctor's appointments, the appointments were postponed or cancelled, or she was reassisgned to new physicians, through no fault of her own.

41) On January 28, 2021, without notice to, or consent from Plaintiff, Defendant changed her status from paid to unpaid FMLA leave, at which time she lost all regular pay as well as overtime pay, and benefits.  Again, this was not at her request.

42) Plaintiff was never allowed to return to work, and her employment was terminated on March 29, 2021, when her FMLA leave was exhausted.

43) Defendant's acts of retaliation on September 21 and September 30, 2020, instituting discipline for the first time, and placing Plaintiff on involuntary leave, set into motion a chain of events that led to the termination of her employment.

44)     Despite her best efforts, Plaintiff was unable to obtain comparable employment until March 28, 2022.

## **PRAYER FOR RELIEF**

**WHEREFORE** Plaintiff respectfully requests that this Court provide the following relief:

a) Award Plaintiff back pay and compensation, plus pre-judgment interest.

b) Award Plaintiff compensatory and punitive damages for emotional pain, mental anguish, and inconvenience.

c) Award costs and attorney's fees, in an amount to be determined by the Court.

d) Grant such other relief as this Court deems just and appropriate.

RESPECTFULLY SUBMITTED,

s/John F. Emerson

John F. Emerson (D.S.C. Bar # 05900jfe)
EMERSON LAW, LLC
1470 Ben Sawyer Blvd., Suite 15
Mount Pleasant, SC  29464
(843) 929-0606
john@johnemersonlaw.com


Date of Signing:  January 11, 2023